1

```
                 IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF TEXAS
                          FORT WORTH DIVISION

UNITED STATES OF AMERICA      .   CRIMINAL ACTION NO.
                              .   4:09-CR-160-A
V.                            .
                              .   Fort Worth, Texas
DANIEL BERNARDINO             .   April 30, 2010
. . . . . . . . . . . . . . . .




                    TRANSCRIPT OF PROCEEDINGS
                       (Sentencing Hearing)
                 BEFORE THE HONORABLE JOHN MCBRYDE
                    UNITED STATES DISTRICT JUDGE




APPEARANCES:

For the Government:           MR. JOSHUA T. BURGESS
                              United States Attorney's Office
                              801 Cherry Street, Suite 1700
                              Fort Worth, Texas  76102-6897
                              (817) 252-5200

For the Defendant:            MR. RODERICK C. WHITE
                              Attorney at Law
                              316 Hemphill Street
                              Fort Worth, Texas  76104
                              (817) 335-1585

Court Reporter:               MS. ANA P. WARREN
                              U.S. District Court Reporter
                              501 W. 10th Street, Room 201
                              Fort Worth, Texas  76102-3637
                              (817) 850-6681


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription.
```

***P R O C E E D I N G S***

1
2        (Commencing, 9:05 a.m.)
3        THE COURT:  Okay.  I'm calling now for sentencing
4   Number 4:09-CR-160-A.  It's United States of America versus
5   Daniel Bernardino.  Actually, there are two defendants in that
6   case that are also scheduled for sentencing -- three in this
7   case also scheduled for sentencing this morning, Jesus Ortega
8   and Gustavo Pulido.  I'm going to start with Mr. Bernardino.
9        Let's see.  Who is here for the government?
10           MR. BURGESS:  Mr. Burgess.
11           THE COURT:  Mr. Burgess is here for the government,
12   and Mr. White is here for the defendant.
13       Mr. Bernardino, state your full name for the record.
14           DEFENDANT BERNARDINO:  Daniel Bernardino.
15           THE COURT:  Let's see.  He needs an interpreter?
16           MR. BURGESS:  Yes, Your Honor.
17           DEFENDANT BERNARDINO:  Yes.
18           THE COURT:  Have you been sworn in this case?
19           THE INTERPRETER:  Yes, Your Honor.
20           THE COURT:  Mr. Bernardino, you appeared before me
21   back on January 5, 2010, when we had a jury trial in your
22   case, and the jury returned a verdict of not guilty as to
23   Count 1 of the indictment as against you and a verdict of
24   guilty as to Count 5.  Actually, it's a superseding
25   indictment, and the jury found you guilty of the offense

1  charged by Count 5 of the superseding indictment, and that
2  offense is smuggling goods from the United States, which we're
3  here today for sentencing based on the conviction resulting
4  from that plea.
5      Mr. White, did you and your client receive in a timely
6  manner the presentence report and the addendum to it?
7          MR. WHITE:  Yes, Your Honor.
8          THE COURT:  And were those items read to your client
9  in his language?
10         MR. WHITE:  Yes, Your Honor.
11         THE COURT:  And did the two of you discuss those
12 items in your client's language?
13         MR. WHITE:  Yes, Your Honor.
14         THE COURT:  Let's see.  I believe there were some
15 objections to the presentence report.  You've seen the
16 government's response to those objections, the probation
17 officer's response, and my order saying that I tentatively
18 concluded that they are without merit.  Do you still wish to
19 pursue any of those objections?
20         MR. WHITE:  Yes, Your Honor.  We will maintain our
21 three objections.  However, we have no additional evidence or
22 argument to offer.  Our position is sufficiently stated in the
23 written objections, Your Honor.
24         THE COURT:  Okay.  Let me glance back over them.
25      (Brief pause in proceedings)

1      THE COURT:  As I read your objection Number 1, it's
2 simply that you're disagreeing with the guideline.  You don't
3 think it ought to have an offense level as high as it does.
4 Is that basically what you're saying?
5      MR. WHITE:  Yes, Your Honor.
6      THE COURT:  Well, I think as long as the guideline
7 says that, I'm going to overrule your objection.  I don't
8 think it has merit.
9    Let's see.  Your objection Number 2 has to do with the
10 probation officer's conclusion that your client gave perjured
11 testimony at his trial and that, because of that, he should be
12 denied the acceptance of responsibility.
13      MR. WHITE:  Your Honor, I don't believe it's the
14 acceptance.  It's the two level enhancement for it.
15      THE COURT:  I mean, given the two level increase.
16 I'm sorry.  I misspoke, for the obstruction of justice.
17    What is your position, that he just didn't understand the
18 question, or what is your position?  Why did he give false
19 testimony?
20      MR. WHITE:  Well, Your Honor, we don't concede that
21 it was false.  If you look at one of the cases that I cited in
22 the objection, just because the jury may go another route does
23 not definitively prove or sufficiently prove that his
24 testimony was false, nor are the things that the jury went
25 another route on don't necessarily rise to the level of being

1    material.
2        If you recall from this trial, Your Honor -- and I believe
3    the addendum -- in the addendum on this objection, the
4    probation officer cites a good portion of the transcript of
5    his testimony from the trial, and in the addendum, many of the
6    points that are made that -- one of the points was, did he
7    know the La Familia organization from down in Mexico.  Well,
8    they cite that to say that he says no.  I don't know.  I don't
9    know who these people are.  I've learned about them since I've
10   been involved in this or what I've seen on the news.  But they
11   cite that as, hey, that's false because, obviously, the jury
12   goes another route.  Well, one, it's not necessarily material
13   to whether or not he did or did not commit this crime, and
14   just because the jury may have, apparently, went another
15   route, it doesn't definitively prove that it was false
16   testimony
17            THE COURT:  Okay.  Let me glance over this again.
18       (Brief pause in proceedings)
19            THE COURT:  Well, he also testified that he didn't
20   know they were taking guns and bullets to Mexico, didn't he?
21            MR. WHITE:  I'm sorry, Your Honor?
22            THE COURT:  Didn't he also testify that he did not
23   know that the group was taking guns or bullets to Mexico?
24       Is that your recollection, Mr. Burgess?
25            MR. BURGESS:  It is, Your Honor.

1           THE COURT:  Obviously, he knew that.  I find that was
2    false.  It was obviously false, and he knew it was false.
3           MR. WHITE:  I believe his testimony, Your Honor, was
4    that one of his -- Ortega had previously told him, maybe even
5    in a joking or jesting manner, hey, I might take some guns to
6    Mexico, guns or ammunition to Mexico.  He didn't pay much
7    attention to it until they pull him over and find the guns and
8    ammunition.
9           THE COURT:  Well, without regard to the other false
10   testimony he gave, to me that obviously was false.  It was
11   testimony he deliberately gave with the intention of trying to
12   influence the jury to return a verdict in his favor as to both
13   counts of the indictment.  He didn't give that testimony by
14   reason of an accident or a mistake or misunderstanding about
15   something or some deficiency.  He did it on purpose.  And
16   there were other areas where he gave false testimony, and I
17   find that his doing so did constitute obstruction of justice
18   within the meaning of USSG, Section 3C1.1.  Therefore, the
19   probation officer was correct in applying a two level increase
20   for obstruction of justice.
21      Let's see.  Did you have another objection?
22          MR. WHITE:  Yes, Your Honor.  There was Objection 3.
23   It deals with the minor role enhancement -- I mean, reduction
24   that was not present in the presentence report.
25          THE COURT:  Well, of course, he has the burden to

1   persuade the Court that he did have a role that would cause
2   him to be entitled to a downward adjustment.
3            MR. WHITE:  I --
4            THE COURT:  Go ahead.
5            MR. WHITE:  I understand that, Your Honor.  It
6   appeared to me that in the addendum -- in the PSR and the
7   addendum, the Court was brought aware of the specifics of
8   Mr. Bernardino's testimony, and they cite portions of that to
9   say that, hey, he committed perjury, or, hey, he was more
10  involved or less involved, and we would ask the Court to take
11  notice of that entire testimony to support our request for
12  that minor role.
13     The testimony at trial was undisputed with regard to this.
14  They had 33 firearms and 11,000 rounds of ammunition.  Even if
15  you believe that Mr. Bernardino is guilty of this crime, he
16  did one thing.  He bought about 300 or 400 rounds of
17  ammunition and gave them to another person, and that's it.
18  That's all he did.
19           THE COURT:  Well, of course, he was participating in
20  the transport of all of those weapons and the ammunition he
21  purchased into Mexico.
22           MR. WHITE:  Your Honor, those were found in another
23  vehicle.  All the ammunition and the guns were not found in
24  his vehicle.
25           THE COURT:  Wasn't he part of the caravan that was

1    taking those weapons into Mexico, or attempting to?

2        MR. WHITE:  He was part of -- he was driving with

3    them for safety reasons, what they historically do when they

4    drive to Mexico.

5        THE COURT:  Okay.  Well, I'm not going to sustain it.

6    I'm going to overrule that objection because he hasn't

7    persuaded me that his role was such that he should be given a

8    lower offense level.  I'm satisfied that he knew exactly what

9    was going on and that he was participating in the caravan to

10   take the weapons into Mexico with the knowledge that he was

11   doing so.  Of course, he did participate in the purchase of

12   some of the bullets that were being taken down there as did

13   several other people.

14   So I'm not satisfied.  He hasn't persuaded me that his

15   role is such that he ought to be given a mitigating role

16   objection.  So I'll overrule those objections.

17   Does that take care of all the objections?

18       MR. WHITE:  Yes, Your Honor.

19   Just for record purposes, my understanding is that much of

20   his testimony has been cited in both the PSR and the addenda,

21   and we would initially ask the Court to take notice with

22   regard to our objection -- our third objection of the entirety

23   of his testimony with regard to this point, Your Honor.

24       THE COURT:  There being no further objections to the

25   presentence report, the Court adopts as the fact findings of

1  the Court the facts set forth in the presentence report as
2  modified or supplemented by the addendum and any findings I
3  found from the bench.  The Court adopts as the conclusions of
4  the Court the conclusions expressed in the presentence report
5  as modified or supplemented by the addendum and any
6  conclusions I've expressed from the bench.
7      The Court concludes that the total offense level is 28.
8  That the Criminal History Category is 1.  That the supervised
9  release range is two to three years.  That the fine range is
10 $12,500 to $125,000, and that a special assessment of $100 is
11 mandatory.
12     Okay.  You can make -- oh, I'm sorry.  The imprisonment
13 range under the guidelines is 78 to 97 months, if I failed to
14 say that.
15     Okay.  You may proceed.
16         MR. WHITE:  Your Honor, we have several members of
17 his family here.  I believe the entire middle section of the
18 courtroom is here in support of Mr. Bernardino.
19         THE COURT:  Okay.  Well, thank you be for being here.
20         MR. WHITE:  And rather than having them all, I would
21 like for his wife and a couple of his children to say a very
22 brief word to the Court.
23         THE COURT:  That's fine.  They can come forward.
24         MR. WHITE:  Ms. Martha Bernardino.
25         THE COURT:  Okay.  State your full name and tell us

1 where you live -- does she need an interpreter?
2   MR. WHITE: Yes, Your Honor.
3   THE COURT: Okay. Mr. Hernandez will serve that
4 purpose.
5  Give us your name and tell us where you live.
6   MS. MARTHA BERNARDINO: Martha Bernardino, in Fort
7 Worth. I'm living in Fort Worth.
8   THE COURT: Okay. You may proceed.
9   MS. M. BERNARDINO: Daniel is a good person. He's
10 honest, honorable. He's a good husband, good father, good
11 son. Everything that we have is because of our own work.
12 He's the kind of person that is dedicated to his job, and I
13 just want to ask you to please review this case very carefully
14 and notice that he never did anything wrong before. He's only
15 dedicated to his work and that he's an honest man.
16   THE COURT: Okay. Anything else?
17   MS. MARTHA BERNARDINO: And the children and myself,
18 we need him.
19   THE COURT: Okay. Thank you.
20   MS. MARTHA BERNARDINO: Thank you.
21   MR. WHITE: His younger son, Luis Bernardino, Your
22 Honor.
23   THE COURT: Okay, if he would come forward.
24   MR. WHITE: He does not need an interpreter, Your
25 Honor.

1      THE COURT: Okay. Identify yourself by name and
2  where you live.
3      MR. L. BERNARDINO: My name is Luis Bernardino. I
4  live in Fort Worth.
5      THE COURT: Okay.
6      MR. L. BERNARDINO: I just want to say he's a real
7  good, loving father. He's been great to us, my mom, my two
8  younger daughters. He's always been there for anything I
9  needed. He does the best he can. He's a real hard worker.
10 He's always been there for us, and I would just -- we love him
11 as much as he loves us. That's it.
12     THE COURT: Thank you.
13     MR. WHITE: And, lastly, Your Honor, one of his
14 daughters, Myra Bernardino. She is a student at UT Arlington,
15 Your Honor.
16     THE COURT: Okay. Identify yourself and say where
17 you live.
18     MS. MYRA BERNARDINO: Myra Bernardino, and I live in
19 Fort Worth, Texas.
20     THE COURT: Okay.
21     MS. MYRA BERNARDINO: I just want to say my father,
22 he's the greatest dad ever. He cares for us. He's always
23 been there for us. He just wants what's best for us, and we
24 need him. He's great. He and my little sister, they love
25 each other so much. My sister needs him. I do, my mom, my

1  family.  He's always encouraged us to pursue our dream, go to
2  school.  That's why I go to UTA Arlington.  I want to pursue
3  my career, and he's always encouraged me through all that, and
4  we just need him because we miss him.  That's all.  Thank
5  you.
6          THE COURT:  Okay.  Thank you.
7     Mr. White, you can make whatever statement you would like
8  to make on behalf of your client.
9          MR. WHITE:  Your Honor, I would just like to bring
10 the Court's attention back to the sentencing memorandum with
11 the numerous letters that I have attached to it.
12    This is a man that came here as a child and worked in the
13 fields in Texas, California, Arizona, doing work that we would
14 not perform for five times as much, and in 30 plus years of
15 being here, he don't have as much as a traffic ticket.  Other
16 than this situation, he's been a credit to this country, a
17 true credit to this country.
18    You see, his previous boss, Mike Contramoney (phonetic),
19 wrote a character letter for him that says, hey, I know what
20 this guy -- I know what's happened here in these court
21 proceedings, and he's always got a job here with me.  He's
22 always got a job here with us.
23    He raised a family on the north side of Fort Worth, Your
24 Honor, and probably one of the most highest -- obviously, it's
25 one of the neighborhoods that has one of the higher crime

1 rates in our area but quite possibly in the entire country,
2 and he's raised three grown children and has two younger
3 children. None of them have ever been in trouble either.
4 What does that say about this man?
5     This man started from dirt, picking watermelons, picking
6 cantaloupes, six, seven, eight years old, all day, every day,
7 sleeping in tents, away from his mother, away from his father.
8 Thirty plus years, he's a credit to this country, a credit to
9 this country.
10     It brings us to what happens at his trial. While
11 Mr. Bernardino and I -- obviously, we do not agree with what
12 happened at his trial, he respected. He didn't hem. He
13 didn't holler. He didn't cry. He respected because he
14 respects this country, and he respects the Court's authority,
15 and he's prepared to do what he has to do, but we ask the
16 Court to take a moment and look at his life, look at what this
17 man has been through, and look at how he has performed up
18 until this point, not even a traffic ticket.
19     From the history that he came from, Your Honor, this man
20 is a credit, and we would ask the Court to utilize its
21 discretion after the Booker case and sentence him below what's
22 in the presentence report.
23     This case is a Class C felony, which means that he's
24 eligible for probation. But for going to trial -- and I'm
25 sure you're going to sentence two or three others, and they

1  are all more involved than him and are going to get a lighter
2  sentence, only because he went to trial is why he's looking at
3  such a stiff sentence.
4      Even though the jury may have believed he was involved in
5  this -- and we respect that, and we understand the Court has
6  to sentence him accordingly, but we ask the Court to take into
7  consideration the entirety of his life, because other than
8  this situation, there is no one or nothing that can be said
9  bad about this hard-working, simple family man.  Thank you,
10  Your Honor.
11        THE COURT:  Okay.  Mr. Bernardino, you have the right
12  to make any statement or presentation you would like to make
13  on the subject of mitigation, that is, the things you think
14  the Court should take into account in determining what
15  sentence to impose or on the subject of sentencing more
16  generally, and at this time I'll invite you to do that.
17        DEFENDANT BERNARDINO:  First, thank you.  Thank you,
18  God, and to Your Honor for giving me the opportunity to
19  speak.
20      I just wish to have the opportunity to continue working.
21  I've always been working, and I sure appreciated what was said
22  by my family.  That's all.  Thank you.
23        THE COURT:  Okay.  Well, I think a sentence at the
24  bottom of the advisory guideline range of 78 months with a
25  term of supervised release of three years -- and, of course,

1   I'm going to order that he be turned over to the immigration
2   officials for deportation once he's served his imprisonment
3   sentence as one of the conditions of his supervised release.
4   I think those things, plus, a payment of a special assessment
5   of $100 would be a reasonable sentence in this case that
6   adequately addresses all of the factors listed in 18, United
7   States Code, Section 3553(a).
8       Though this defendant doesn't have a criminal history that
9   would concern the Court, the nature of the offense that he was
10  convicted of is such that I don't think it would be
11  appropriate to sentence below the bottom of the advisory
12  guideline range.  I think a sentence at the very bottom
13  adequately addresses all of the factors and all the arguments
14  I have heard.
15      So the Court orders and adjudges that the defendant be
16  committed to the custody of the Bureau of Prisons to serve a
17  term of imprisonment of 78 months.  I'm not ordering him to
18  pay a fine because I don't have any indication that he has the
19  resources with which to do so.  I am ordering that he serve a
20  term of supervised release of three years.  That will start
21  when he gets out of prison.
22      Now, pursuant to 18, United States Code, Section 3583(d),
23  as a condition of supervised release, once the defendant has
24  completed his sentence of imprisonment, he shall be
25  surrendered by the Federal Bureau of Prisons to a duly

1    authorized immigration official for deportation in accordance
2    with the established procedures provided by the Immigration
3    and Nationality Act.  And as a further condition of supervised
4    release, if the defendant is ordered deported, he shall remain
5    outside the United States.
6        Now, in the event the defendant is not deported
7    immediately upon release from imprisonment or should he ever
8    be within the United States during any portion of his term of
9    supervised release, he shall comply with the standard
10   conditions of supervised release that will be set forth in the
11   judgment of sentence and conviction and shall comply with the
12   following additional conditions:
13       He shall not possess illegal controlled substances.  He
14   shall not commit another federal, state, or local crime.  He
15   shall cooperate in the collection of DNA as directed by the
16   probation officer and as authorized by the Justice for All Act
17   of 2004, and he'll pay a special assessment of $100.  Of
18   course, this isn't one of the conditions of supervised
19   release, the special assessment.  That's independent of that.
20   He will pay a special assessment of $100.  That's payable
21   immediately to the United States of America through the office
22   of the United States Clerk here in Fort Worth
23       Mr. Bernardino, you have the right to appeal from the
24   sentence I've imposed if you're dissatisfied with it.  That
25   appeal will be to the United States Court of Appeals for the

1  Fifth Circuit.  You have the right to appeal in forma
2  pauperis.  That means without any cost to you if you qualify
3  for it.  You have the right to have the clerk of the Court
4  file a notice of appeal for you, and the clerk will do that
5  forthwith if you were to specifically request it.
6      You and your attorney have been given a form that outlines
7  certain rights and obligations in reference to an appeal.  If
8  you haven't already done so, I want the two of you to review
9  that in your language, and once both of you are satisfied you
10 understand it, I want both of you to sign it and return it to
11 the Court coordinator.
12     Has that been done?
13          MR. WHITE:  Yes, Your Honor.
14          MR. BURGESS:  Your Honor, I move to dismiss the
15 forfeiture allegations that remain against Mr. Bernardino at
16 this time.
17          THE COURT:  In the original indictment?
18          MR. BURGESS:  Yes, Your Honor.
19          THE COURT:  Okay.  I'll grant that.
20     The original indictment, or at least those offenses in the
21 original indictment, against this defendant are dismissed?
22          MR. BURGESS:  Thank you, Your Honor.
23          THE COURT:  Okay.  If you would, hand that forward,
24 Mr. White.
25     The defendant is remanded to custody, and Mr. White is

```
                                                                    18
 1    excused.
 2         (End of proceedings, 9:40 a.m.)
 3
 4
 5                              -oOo-
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20                            CERTIFICATE
21         I certify that the foregoing is a correct transcript from
      the record of proceedings in the above-entitled matter, and
22    that the transcript was prepared by me and under my
      supervision.
23
      s/  Ana P. Warren                          July 9, 2010
24    Ana P. Warren, CSR #2302                      Date
      U.S. District Court Reporter
25                              -oOo-
```